UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
WILLIAM K. SCHMIDT, candidate of the Libertarian Party
for the office of Comptroller of the State of New York;
SAMUEL SCOTT ERICKSON, a United States citizen and          Civil Action
Illinois resident; WILLIAM CODY ANDERSON, as Chair          No. 22-cv-2210-BMC
and de facto President and on behalf of the Libertarian Party
of New York, an independent body and unincorporated
association; and DIANE SARE, candidate of the LaRouche
Independent Party for the office of United States Senator from
the State of New York,

Plaintiffs,

- against -

PETER S. KOSINSKI, DOUGLAS A. KELLNER, ANDREW
J. SPANO, and ANTHONY J. CASALE, in their official
capacities as Commissioners of the New York State Board of
Elections,

Defendants.
--------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' ORDER TO SHOW CAUSE AND MOTION FOR A PRELIMINARY INJUNCTION

Gary L. Donoyan
Law Office of Gary L. Donoyan
565 Plandome Road, #209
Manhasset, New York 11030
(516) 312-8782
gdonoyan@garydonoyanlaw.com

Attorneys for the Plaintiffs

April 18, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................ii

PRELIMINARY STATEMENT....................................................................1

STATEMENT OF FACTS.............................................................................2

    A. The LPNY Must Gather a Sufficient Number of Signatures on Independent
       Nominating Petitions in Order for its Candidates to Appear on a Ballot.................3

    B. The Challenged Restriction Limits the LPNY's Ability to Engage Voters and
       Collect Signatures...............................................................................5

    C. The Signature-Gathering Period, for Independent Candidates in 2022, Begins on
       April 19, 2022, and Lasts Just Six Weeks.................................................7

ARGUMENT

    A. The Plaintiffs Will Succeed on the Merits of Their Claims.................................9

       1. New York's Witness "Duly Qualified Voter" Restriction is Subject to
          Strict Scrutiny Review.................................................................9

       2. The Witness "Duly Qualified Voter" Restriction is Not At All Tailored
          to Accomplish New York's Interests in Combatting Ballot Fraud and
          Ensuring Compulsory Process Over Witnesses.......................................10

       3. Federal Courts Have Overwhelmingly Struck Similar Witness Requirements
          for Failing Strict Scrutiny Review....................................................12

       4. The Lone Court of Appeals Decision Upholding a State Residency
          Requirement is Distinguishable......................................................14

    B. The Diminution of the Plaintiffs' Speech Rights is Irreparable Harm
       Meriting Preliminary Relief...................................................................15

    C. The Balance of the Equities Weighs in Favor of a Preliminary Injunction.............16

    D. The Public Interest Lies in Requiring the NYSBOE to Abide by the First
       Amendment......................................................................................16

    E. Plaintiffs Should Be Excused From Posting Security in This Public Interest Action..17

CONCLUSION......................................................................................18

**CASES**                                           **PAGE**

ACLU v. Reno, 31 F.Supp.2d 473 (E.D.Pa. 1999)……………………………………………16

Buckley v. Am. Const'l Law Found., 525 U.S. 182 (1999)……………..………….…..……...9, 12

Burdick v. Takushi, 504 U.S. 428 (1992)……………………………………………….10

Chandler v. City of Arvada, 292 F.3d 1236 (10th Cir. 2002)…………………………………12

Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30 (2nd Cir. 2010)…………………………………………………………………………………..8

Citizens in Charge v. Gale, 810 F.Supp.2d 916 (D.Neb. 2011)………………….............12, 14, 15

Credico v. NYSBOE, E.D.N.Y. Case No. 10-CV-4555…………………………………………..8

Darien v. Ysursa, 711 F.Supp.2d 1215 (D.Idaho 2010)…………………………………………14

Doctor's Assocs. v. Distajo, 107 F.3d 126 (2nd Cir. 1997)………………………………………17

Elrod v. Burns, 427 U.S. 347 (1976)………………………………………………………….15

Federal Election Comm'n v. Wis. Right to Life, Inc., 551 U.S. 449 (2007)………………..10, 11

Free Libertarian Party, Inc. v. Spano, 314 F.Supp.3d 444 (E.D.N.Y. May 18, 2018), *vacated and remanded for mootness by* Redpath v. Spano, 2020 WL 2747256 (2nd Cir. May 7, 2020)…………………………………………………………….9, 12, 14

Green Party of Pa. v. Aichele, 89 F.Supp.3d 723 (E.D.Pa. 2015)…………………………...13, 14

Greenwich Bd. of Educ. V. Torok, Case No. 03-CV-1407, 2003 WL 22429016 (D.Conn. Oct. 22, 2003)……………………………………………………………………………17

Haitian Centers Council, Inc. v. McNary, 789 F.Supp. 541 (E.D.N.Y. 1992)…………………..17

Initiative & Referendum Inst. v. Jaeger, 241 F.3d 614 (8th Cir. 2001)………………………14, 15

Kermani v. N.Y. State Bd. of Elections, 487 F.Supp.2d 101 (N.D.N.Y. 2006)…………………17

Krislov v. Rednour, 226 F.3d 851 (7th Cir. 2000)………………………………………….…14

Lerman v. N.Y.C. Bd. Of Elections, 232 F.3d 135 (2nd Cir. 2000)………………..…………9, 11

Libertarian Party of Connecticut v. Denise Merrill, Secretary of the State of

Connecticut, Case No. 15-cv-1851 (D.Conn. Aug. 9, 2016), relying on previous
grant of preliminary injunction found at 2016 WL 10405920……………………………………14

Libertarian Party of Virginia v. Judd, 718 F.3d 308 (4th Cir. 2013)…………………….12, 13, 14

Meyer v. Grant, 486 U.S. 414 (1998)……………………………………………………9, 10, 11, 12

N.Y. Progress & Protection PAC v. Walsh, 733 F.3d 483 (2nd Cir. 2013)………………………16

Nader v. Blackwell, 545 F.3d 459 (6th Cir. 2008)………………………………………....…….11, 14

Nader v. Brewer, 531 F.3d 1028 (9th Cir. 2008)……………………………..…………9, 11, 12, 14

Perry v. Judd, 840 F.Supp.2d 945 (E.D.Va. 2012)……………………………………………12

Pharmaceutical Soc. of N.Y. v. N.Y. Dep't of Soc. Servs., 50 F.3d 1168 (2nd Cir. 1995)………17

Price v. N.Y. State Board of Elections, 540 F.3d 101 (2nd Cir. 2008)……………………………9

Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622 (1994)……………………………………………11

U.S. v. State of New York, N.D.N.Y. Case No. 10-CV-1214………………………………………3, 6

Wilson v. Bowman, 121 A.D.3d 1402 (3rd Dept. 2014)…………………………………………..8

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008)……………………………………..8

Yes on Term Limits v. Savage, 550 F.3d 1023 (10th Cir. 2008)……………………..…………11, 12

## STATUTES

N.Y. Elec. L. §1-104………………………………………………………………………....3

N.Y. Elec. L. §5-102………………………………………………………………..………..5

N.Y. Elec. L. §6-100 et seq………………………………………………………………………..3

N.Y. Elec. L. §6-138……………………………………………………………………4, 5, 7

N.Y. Elec. L. §6-140……………………………….………………4, 5, 6, 7, 8, 9, 10, 13, 18

N.Y. Elec. L. §6-142……………………………………………………………………..4, 16

N.Y. Elec. L. §6-158……………………………………………………………………4, 5, 7

N.Y. Elec. L. §16-104……………………………………………………………………..1

N.Y. Executive L. §130……………………………………………………………………..5

N.Y. Executive L. §139……………………………………………………………………..5

N.Y. Executive L. §140……………………………………………………………………..5

N.Y. Gen. Associations L. §12………………………………………………………………1

25 Pa. Cons. Stat. §2911……………………………………………………………………10

## CONSTITUTIONAL PROVISIONS

United States Constitution, Amendment I………………………………………...…………7, 13, 14

## PRELIMINARY STATEMENT

Plaintiff William K. Schmidt ("Schmidt") is the candidate for Comptroller of the State of New York of the Libertarian Party of New York ("LPNY"), in the election to be held on November 8, 2022. In support of his campaign, Schmidt has publicly stated: "New York needs to be aware of the great financial difficulties that it faces. The retirement system is experiencing financial stress due to the Federal Reserve's policies of continued currency expansion (inflation) and artificially low interest rates, along with a growing number of retirees entering the system. As a result the system has fallen short of its investment return targets and needs to consider some alternative investments to balance out these risks."

Plaintiff Samuel Scott Erickson ("Erickson") has been a Raymond Precinct Committeeman of the Champaign County Libertarian Party Central Committee for the past six years, and a delegate from Illinois to the Libertarian Party's previous two and the upcoming national conventions. He is a United States citizen, an Illinois resident, and a supporter of Schmidt, as well as of Larry Sharpe, Andrew C. Hollister, Sean C. Hayes, and Thomas D. Quiter, the Libertarian Party candidates for Governor, Lieutenant Governor, and Attorney General of New York, and United States Senator from New York, respectively, whose names will be on the independent nominating petition to be circulated this year, along with Schmidt's. Erickson supports Schmidt and the other Libertarian Party candidates, and wishes to circulate their nominating petition sheets and to witness signatures thereon during the petitioning period (April 19, 2022 through May 31, 2022).

Plaintiff William Cody Anderson ("Anderson") is Chair and de facto President of the LPNY and appears on its behalf, pursuant to Fed.R.Civ.Proc. Rule 17(a)(1)(G), Election Law §16-104(1), and New York General Associations Law §12. He is a resident of and a registered voter

in the State of New York, and is enrolled in the Libertarian Party. The LPNY is the recognized affiliate of the national Libertarian Party. It has run candidates for statewide office every two years since 1974 except 1986.

Plaintiff Diane Sare ("Sare") is the candidate for United States Senator from New York of the LaRouche Independent Party, an independent body, in the election to be held on November 8, 2022.

Because the LPNY did not meet the current requirements that would entitle it to recognized "party" status, it must circulate independent nominating petitions to place its candidates on the ballot by collecting the requisite number of signatures from potential voters. However, the LPNY's ability to engage with potential voters and gather their signatures is stymied by a state law requirement – enforced by Defendants, the Commissioners of the New York State Board of Elections (collectively, the "NYSBOE"), who have that responsibility – that the LPNY's petition witnesses be duly qualified New York voters (or, alternatively, New York Notary Publics or New York Commissioners of Deeds). Because the LPNY's (and the other Plaintiffs') speech rights are severely affected by that requirement, and because the independent nominating petition signature-gathering process is about to begin (on April 19, 2022), Plaintiffs now move for preliminary relief.

## STATEMENT OF FACTS

The LPNY was organized in 1972 by a group centered around Ed Clark, later the Libertarian Party presidential candidate. The Statue of Liberty is their ballot symbol, and they appear on the ballot as the Libertarian Party. Starting in 1974, the LPNY has run candidates for statewide office (including U.S. Senate and U.S. Presidential electors) every two years except for 1986, the only political organization in the state without recognized "party" status to do so. It is the recognized New York affiliate of the national LP, which is the third-largest political party in

2

the United States in terms of membership, popular vote secured in federal elections, and candidates who run for federal, state, and local office per election.

In November 2018, the LPNY obtained recognized "party" status as a result of its Governor candidate having received sufficient votes in the General Election that month. However, after a change in the Election Law relating to the requirements to keep or maintain recognized "party" status, in November 2020 the LPNY lost that status, as a result of its President candidate not having received sufficient votes in the General Election that month, and since then the LPNY has been an independent body once again. The LPNY plans to field candidates for the 2022 state and federal elections, and has begun the procedures necessary to put its candidates on the ballots as soon as lawfully possible.

## A. The LPNY Must Gather a Sufficient Number of Signatures on Independent Nominating Petitions in Order for its Candidates to Appear on a Ballot.

For purposes of determining whether a candidate for public office may appear on an election ballot, New York divides candidates into two categories: those nominated by a recognized "party," and those nominated by an independent body. Election Law §§1-104(12), and 6-100 et. seq. A recognized "party" is "any political organization which, excluding blank and void ballots, at the last preceding election for governor received, at least two percent of the total votes cast for its candidate for governor, or one hundred thirty thousand votes, whichever is greater, in the year in which a governor is elected and at least two percent of the total votes cast for its candidate for president, or one hundred thirty thousand votes, whichever is greater, in a year when a president is elected." Election Law §1-104(3). An independent body is "any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a party as herein provided." Election Law §1-104(12).

Candidates not nominated by a recognized "party" may only be listed on an election ballot if they gather signatures on an independent nominating petition that conforms with Election Law §6-140.

In order to place a candidate on the election ballot, a nominating petition must be supported by the signatures of registered New York voters. The number of signatures necessary for a statewide candidate is 45,000 or one percent of the votes most recently cast for Governor; for a New York City-wide candidate 7,500 or five percent of the votes most recently cast for Governor in that unit, whichever is less; and for a candidate for U.S. House of Representatives, 3,500 or five percent of the votes most recently cast for Governor in that unit, whichever is less. For offices not enumerated, the number of signatures necessary is 1,500 or five percent of the votes most recently cast for Governor in that unit, whichever is less. Election Law §6-142.

Nominating petitions are required to be drafted "substantially" in the form set forth in Election Law §6-140(1)(b) (or, alternatively, if the witness is a New York Notary Public or a New York Commissioner of Deeds, in the form set forth in Election Law §6-140(2)), and no petitioning candidate is permitted to begin collecting signatures prior to six weeks before the last day permitted to file the said petition in the year of the election in which the candidate wishes to participate. In 2022, that six-week period begins on April 19 and ends on May 31. Election Law §§6-158(9), 6-138(4).

The LPNY does not qualify as a recognized "party," and is thus an independent body pursuant to New York law. Hence, all of the LPNY's efforts to place its candidates on the ballot are subject to the rules for independent bodies, and it must have its nominating petitions approved by the NYSBOE (or, as the case may be, by a local board of elections acting under the direction of the NYSBOE) in order for its candidates to appear on ballots for all races in New York.

## B. The Challenged Restriction Limits the LPNY's Ability to Engage Voters and Collect Signatures.

A person who collects signatures on a candidate's independent nominating petition is known as a "witness." Election Law §6-140(1)(b). In relevant part, each witness must be "a duly qualified voter of the state" of New York. *Id.* Alternatively, a New York Notary Public or a New York Commissioner of Deeds may use a different version of the petition sheet with a different witness statement. Election Law §6-140(2). Election Law §6-140(1)(b) also requires the independent nominating petition to contain the phrase: "I am a duly qualified voter of the State of New York", which the witness must sign under penalty of perjury. A duly registered voter must be a resident of New York State. Election Law §5-102(1). Notaries Public and Commissioners of Deeds must either be New York State residents or have an office or place of business within the State. New York Executive Law §§130(1), 139(3), 140.

The requirement that witnesses be duly qualified New York voters means that any non-New York resident, or other person not registered to vote in New York (other than a New York Notary Public or Commissioner of Deeds) wishing to act as a witness must be accompanied by a duly qualified New York voter while collecting signatures for independent nominating petitions, and only the accompanying New York witness may complete the petition sheets, which reduces their ability to work efficiently to gather signatures. And limiting the pool of professional witnesses to in-state professionals creates a monopoly for New York professional witnesses, thereby decreasing the ability of the LPNY to negotiate favorable contract terms, with the effect of dramatically increasing the cost of independent nominating petition signature drives. Additionally, the LPNY's experience is that out-of-state professional witnesses, as well as many out-of-state volunteer witnesses such as Erickson, have generated a much higher percentage of valid signatures than the few in-state professional witnesses and volunteer witnesses. The

prohibition on non-duly qualified New York voter witnesses therefore reduces the quality of witnesses that the LPNY may use, which in turn reduces the percentage of valid signatures and increases the cost of securing sufficient valid signatures to place the LPNY's candidates on the State's general election ballot.

The requirement that all witnesses be duly qualified New York voters (or New York Notary Publics or New York Commissioners of Deeds) places a severe burden on Schmidt, Erickson, Sare, and the LPNY by making it more difficult for them to disseminate their political views, to choose the most effective way of conveying their message, to associate in a meaningful way with prospective witnesses for the purpose of eliciting political change, to gain access to the ballot, and to utilize the endorsement of its candidates, which can be implicit in a witness's efforts to gather signatures on the candidates' behalf.

Plaintiffs are not requesting a court order invalidating the current form of petition. Plaintiffs seek, and are entitled to, a court order providing for an alternative version of the form for independent nominating petitions, that eliminates the requirement that witnesses to its signatures be "duly qualified voters of the state," because that requirement infringes the constitutional rights of Plaintiffs, in particular their rights under the First and Fourteenth Amendments. The new alternative petition sheets could simply be combined with the current form sheets and be submitted together as a single entire petition, just as the alternative Notary Public/Commissioner of Deeds form sheets (authorized by Election Law §6-140(2)) can be submitted together and have been submitted together in the past. The court order authorizing such an alternative petition form would inject no uncertainty and invite no chaos in the election process. An example of an alternative independent nominating petition form that would comply with

Election Law §6-140(1)(b) in all respects other than the challenged, unconstitutional requirement that the witness be a "duly qualified voter of the state" is annexed hereto as **Exhibit 1**.

Upon the making of such an order, there would be no need for the promulgation of forms replacing or altering the current statutory forms. New sample forms and instructions are not necessary. The sample form exemplified as Exhibit 1 could and should be used and circulated immediately upon the court's ordering its acceptance by Defendants, when filed either together with the currently-approved sheets, or separately (which filings would occur, at the earliest, on May 24, 2022).

Plaintiffs are not suggesting that the current form could not or should not be accepted for filing by Defendants, or that candidates' original forms and witnesses could not continue to be used, to collect signatures for their independent nominating petitions. Defendants, and the NYSBOE and the local boards of election under their direction, need not concern themselves with the new recruitment and training of witnesses heretofore ineligible. Plaintiffs request only that Defendants be ordered to <u>also</u> accept petition sheets without the "I am a duly qualified voter of the State of New York" language, as exemplified by Exhibit 1. The current unavailability of that option violates the Constitution and should be immediately enjoined.

### C. The Signature-Gathering Period, for Independent Candidates in 2022, Begins on April 19, 2022, and Lasts Just Six Weeks.

New York places substantial time constraints upon petitioning candidates. At the outset, no candidate may begin circulating an independent nominating petition prior to six weeks before the last day to file that petition, regardless of the candidate's ability or willingness to do so. Election Law §6-138(4). Independent nominating petitions must normally be filed with the NYSBOE (or, as the case may be, with a local board of elections acting under the direction of the NYSBOE) no later than twenty-three weeks prior to the election. Election Law §6-158(9).

Should the NYSBOE (or a local board of elections acting under its direction) rule that such a petition is invalid, the candidate must also have time to challenge the ruling. In past years, this compressed time frame has meant that the LPNY has not learned whether its candidates would even appear on the ballot until late August, just over two months before election day, or even much later. *See, e.g.*, <u>Wilson v. Bowman</u>, 121 A.D.3d 1402 (3rd Dept. 2014) (restoring an LPNY candidate for New York State Senate to the ballot 12 days before the election); <u>Credico v. NYSBOE</u>, E.D.N.Y. Case No. 10-CV-4555, Order dated Oct. 27, 2010 (vacating an order granting a preliminary injunction that changed the face of the ballot in favor of an LPNY candidate, because "compliance with my order is not logistically possible given the fact that the election is only a week away.") Therefore, it is crucial for the LPNY to begin gathering signatures from the first day permitted, and for it to gather the signatures in the most efficient manner possible.

## ARGUMENT

To obtain a temporary restraining order or a preliminary injunction, a plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008). Even if a court "cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims," it may still issue a temporary restraining order or preliminary injunction if the plaintiff shows "sufficiently serious questions going to the merits to make them a fair ground for litigation" and "the costs outweigh the benefits of not granting an injunction." <u>Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.</u>, 598 F.3d 30, 35 (2nd Cir. 2010) (finding that the Second Circuit's "serious questions" standard remains valid after <u>Winter</u> and other recent Supreme Court decisions). For the reasons

set forth below, the LPNY and the other Plaintiffs have made a clear showing that they are entitled to a preliminary injunction.

### A. The Plaintiffs Will Succeed on the Merits of Their Claims.

#### 1. New York's Witness "Duly Qualified Voter" Restriction is Subject to Strict Scrutiny Review.

The degree of scrutiny given to an election statute increases with the severity of the burden that the challenged measure imposes upon a First Amendment right. Price v. N.Y. State Board of Elections, 540 F.3d 101, 108 (2nd Cir. 2008). People trying to persuade potential voters to sign a ballot access petition engage in "interactive communication concerning political change" (Meyer v. Grant (486 U.S. 414, 420 (1998)), which is "core political speech." Lerman v. N.Y.C. Bd. Of Elections, 232 F.3d 135, 146, 148 (2nd Cir. 2000) (holding that the speech of those gathering signatures for ballot access petitions is "identical" to the speech of those gathering signatures for ballot initiatives at issue in Meyer). Restrictions upon who may gather signatures squelch speech by shrinking the pool of potential circulators available to disseminate a would-be candidate's message (id. at 147, emphasis added), which "severely burdens" the candidate's speech. Id. at 146. As a severe burden on speech, witness residency requirements engender the most exacting review (id. at 149), surviving only if the defendant demonstrates that the restriction is narrowly tailored to serve a compelling state interest. Buckley v. Am. Const'l Law Found., 525 U.S. 182, 192 n. 12 (1999). New York's "duly qualified voter" requirement is necessarily an even greater burden on speech, since it excludes not only all non-residents, but also those residents who are not duly qualified voters (other than New York Notaries Public and New York Commissioners of Deeds, who are permitted to use an alternative witness statement (Election Law §6-140(2))).

In a case brought on nearly identical grounds by the LPNY (at that time, a corporation styled Free Libertarian Party, Inc.) and other parties in 2016, this court has already held "that the

witness-residency requirement in New York Election Law Section 6-140(1)(b) unconstitutionally infringes upon plaintiffs' First Amendment rights." See Free Libertarian Party, Inc. v. Spano, 314 F.Supp.3d 444 (E.D.N.Y. May 18, 2018), *vacated and remanded by* Redpath v. Spano, 2020 WL 2747256 (2nd Cir. May 7, 2020) ("… on mootness grounds, …). In November 2018, the LPNY finally obtained recognized "party" status, by meeting the qualifications therefor in the Election Law, but the Second Circuit subsequently held that the LPNY and all other plaintiffs thereupon had lost their standing to defend the appeal of the above case, because Election Law §6-140(1)(b) applies only to and infringes only upon independent bodies, not to recognized "parties." In November 2020, the LPNY (which had become an unincorporated association) lost its recognized "party" status and reverted to independent body status, by failing to meet the newly adopted qualifications for recognized "party" status in the Election Law. The LPNY and its candidates and supporters thus also resumed their standing to bring and prosecute the instant claims.

According to all of the above precedents, New York's witness "duly qualified voter" requirement is lawful only if it survives strict scrutiny review.

2. **The Witness "Duly Qualified Voter" Restriction is Not At All Tailored to Accomplish New York's Interests in Combatting Ballot Fraud and Ensuring Compulsory Process Over Witnesses.**

Once this Court determines that strict scrutiny must be applied, it is presumed that the challenged law is unconstitutional. Burdick v. Takushi, 504 U.S. 428, 434 (1992); *see generally* Meyer, 486 U.S. at 425 (striking criminal prohibition against the use of paid signature-gatherers and describing the burden of strict scrutiny as "well-nigh insurmountable"). To withstand strict scrutiny, the government must prove that the law is necessary to achieve a compelling governmental interest. Federal Election Comm'n v. Wis. Right to Life, Inc., 551 U.S. 449, 450-

51 (2007). If this is proved, the state must then demonstrate that the law is also narrowly tailored to achieve the asserted interest. Id.

In order to meet its burden of proof, the government "must do something more than merely posit the existence of the disease sought to be cured." Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 664 (1994). In other words, the government must factually prove the existence of the evil and that the challenged statute is narrowly tailored to remedy that evil.

Our Court of Appeals has identified electoral integrity and fraud prevention as compelling state interests. Lerman, 232 F.3d at 149. However, the Second Circuit has also held that residency requirements for those witnessing petition signatures "do[ ] not bear even a *rational* relationship" to those compelling interests. Id. (striking New York requirement that signature witnesses reside in same political subdivision as the one in which a candidate proposes to run). Here, the NYSBOE cannot show that allowing non-duly qualified New York voters to witness nominating petitions free from the supervision of a duly qualified New York voter would increase fraud, because doing so would require it to prove that non-duly qualified New York voters are more likely to commit fraud than duly qualified New York voters are. The courts have rejected such a hypothesis. *See, e.g.,* Meyer, 486 U.S. at 426; Nader v. Brewer, 531 F.3d 1028, 1037 (9th Cir. 2008); Yes on Term Limits v. Savage, 550 F.3d 1023, 1029 (10th Cir. 2008). As the Second Circuit has explained, witnesses – whether they hail from in state or not – "are motivated entirely by an interest in seeing their candidate gain access to the ballot, rather than any interest in ensuring integrity in the signature collection process." Lerman, 232 F.3d at 151. A court might therefore conclude that in-state witnesses, who are the only ones eligible to become duly qualified New York voters, "are even *more* likely to engage in chicanery than non-residents," since they have a stronger interest in which candidate is elected. Id.

Moreover, a duly qualified voter requirement is unnecessary to bring witnesses within the state's subpoena power. The courts in Brewer, Yes on Term Limits, Chandler v. City of Arvada (292 F.3d 1236, 1244 (10th Cir. 2002)), Citizens in Charge v. Gale (810 F.Supp.2d 916, 928 (D.Neb. 2011)), Perry v. Judd (840 F.Supp.2d 945, 958 (E.D.Va. 2012)), Libertarian Party of Virginia v. Judd (718 F.3d 308 (4th Cir. 2013)), and Free Libertarian Party, Inc. v. Spano, 314 F.Supp.3d 444 (E.D.N.Y. May 18, 2018), *vacated and remanded by* Redpath v. Spano, 2020 WL 2747256 (2nd Cir. May 7, 2020) ("… on mootness grounds, …) have all ruled that such an interest is not narrowly tailored, as states could require witnesses to submit to their subpoena power before becoming a witness. Further, the NYSBOE can present no evidence that New York has been unable to prosecute any fraudulent witnesses because they were not duly qualified New York voters. In short, the NYSBOE cannot show that the duly qualified voter requirement is narrowly tailored to preserve the integrity of the electoral process in New York. Accordingly, the duly qualified voter requirement violates the First Amendment and preliminary relief should issue for the Plaintiffs.

### 3. Federal Courts Have Overwhelmingly Struck Similar Witness Requirements for Failing Strict Scrutiny Review.

The Supreme Court has twice considered statutes that restrict who may circulate election petitions in support of ballot access, and has twice invalidated the restrictions. In Meyer, the Court struck down Colorado's prohibition on paid petition circulators. Holding that the restriction was "a limitation on political expression subject to exacting scrutiny" the Court reasoned that the state had failed to justify the burden on advocates' free speech rights. Id. at 420. In American Constitutional Law Foundation, the Court invalidated a requirement that petition circulators be registered voters of the state, holding that the "requirement cuts down the number of message carriers in the ballot-access arena without impelling cause." 525 U.S. at 197. Every court to

12

consider the issue has held such requirements invalid where those out-of-state persons seeking to witness election petitions have expressly been willing to consent to the other state's jurisdiction for purposes of investigation and prosecution of allegations of election petition fraud.

The Eastern District of Pennsylvania recently granted a permanent injunction forbidding enforcement of a duly qualified voter witness requirement. Green Party of Pa. v. Aichele, 89 F.Supp.3d 723, 742 (E.D.Pa. 2015). The enjoined Pennsylvania statute provides, in relevant part, that each sheet of a nomination petition contain an attestation that the witness "is a qualified elector of the State ..." 25 Pa. Cons. Stat. §2911(d)(1). That statutory language is virtually identical to the challenged language of New York Election Law §6-140(1)(b), which provides in relevant part that the witness to a nominating petition sheet must be "a duly qualified voter of the state."

The court in Green Party of Pennsylvania relied on Libertarian Party of Virginia. Citing "a triumvirate of 2008 decisions," the court in Libertarian Party of Virginia, in turn, noted that there is "a general agreement among our sister circuits that residency restrictions bearing on petition circulators and witnesses burden First Amendment rights in a sufficiently severe fashion to merit the closest examination" and applied strict scrutiny to the Virginia law. 718 F.3d at 317. The court rejected Virginia's argument that its residency requirement was narrowly tailored to promote the governmental interest of policing fraud. The alternative posed by the plaintiffs – requiring nonresident witnesses to agree to subject themselves to the state's subpoena power – was sufficient to protect the state interest, and "manifestly less restrictive." Id. at 318. Although it was plausible that nonresident witnesses might be difficult to locate, or renege on their agreement to submit to subpoena power, "[t]here are few guarantees in life, ... and it is hardly an iron-clad proposition that a similarly situated resident witness will be amenable to service and comply with

a lawfully issued subpoena." Id. Accordingly, the Fourth Circuit upheld the district court's decision that the residency requirement was unconstitutional.

Green Party of Pennsylvania and Libertarian Party of Virginia are but two of the many federal decisions striking down such requirements. Similar laws have been invalidated across the country. Nader v. Blackwell, 545 F.3d 459, 473 (6th Cir. 2008) (holding that law requiring witnesses to be Ohio residents violates First Amendment); Brewer, 531 F.3d at 1038 (same (Arizona)); Krislov v. Rednour, 226 F.3d 851, 866 (7th Cir. 2000) (same (Illinois)); Citizens in Charge, 810 F.Supp.2d at 929 (same (Nebraska)); Darien v. Ysursa, 711 F.Supp.2d 1215, 1235 (D.Idaho 2010) (same (Idaho)); Libertarian Party of Connecticut v. Denise Merrill, Secretary of the State of Connecticut, Case No. 15-cv-1851 (D.Conn. Aug. 9, 2016), relying on previous grant of preliminary injunction found at 2016 WL 10405920 ("The Court has concluded that the challenged petitioning statutes, which require that petition circulators in Connecticut be residents of the State of Connecticut, contravene the Plaintiff's First Amendment rights."); Free Libertarian Party, Inc. v. Spano, 314 F.Supp.3d 444 (E.D.N.Y. May 18, 2018), vacated and remanded by Redpath v. Spano, 2020 WL 2747256 (2nd Cir. May 7, 2020) ("... on mootness grounds, ...). This Court should find the reasoning of those decisions persuasive and grant the Plaintiffs preliminary relief.

### 4. The Lone Court of Appeals Decision Upholding a State Residency Requirement is Distinguishable.

There is a single federal appellate decision upholding a witness residency law, Initiative & Referendum Inst. v. Jaeger (241 F.3d 614 (8th Cir. 2001)). In that case, the court upheld a residency requirement for witnesses of petitions for ballot initiatives and referendums in North Dakota. The court noted that there had been a major incidence of signature fraud perpetrated by two Utah residents, who "left the State, and the matter was never fully resolved." Id. at 616. The court also

suggested that "requiring circulators to be state residents ensures that a provision has grass-roots support in North Dakota and that the initiative process is not completely taken over by moneyed, out-of-state special interest groups." Id. at 617.

The reasoning of Initiative & Referendum Institute was rejected in a later decision of a district court even within the Eighth Circuit. In Citizens in Charge, the court noted that Initiative & Referendum Institute was based in part on the lack of evidence of any burden imposed by the law. In contrast, the plaintiffs in Citizens in Charge offered evidence that mandated use of in-state witnesses increased costs, necessitated training the in-state solicitors, caused great difficulties in locating in-state witnesses because of their scarcity, and did not combat fraud because fraud was vanishingly rare. 810 F.Supp.2d at 926. Those facts largely mirror the situation in New York. The court also noted that many other courts had recognized that having witnesses consent to jurisdiction was a less restrictive means of policing fraud. Id. at 926-27 (collecting cases). This Court should therefore not rely on Initiative & Referendum Institute in reaching a decision on the Plaintiffs' request for relief.

B. **The Diminution of the Plaintiffs' Speech Rights is Irreparable Harm Meriting Preliminary Relief.**

"The loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 353 (1976). Thus, in the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is inseparably linked to the likelihood of success on the merits of the plaintiff's First Amendment claim. The harm in this case is clear. Absent a temporary restraining order and preliminary injunction, Plaintiffs will suffer a severe diminution in their ability to engage in core political speech. Furthermore, absent prompt relief, the LPNY will lose precious time between the first date on which it can begin circulating, April 19, and the fall elections. Because the Plaintiffs will

15

be deprived of their First Amendment rights if the NYSBOE is not enjoined from enforcing the statutory provision challenged here, preliminary relief should issue forthwith.

### C. The Balance of the Equities Weighs in Favor of a Preliminary Injunction.

As discussed above, the LPNY and its candidates and Sare will suffer irreparable harm if the NYSBOE is permitted to continue to enforce the challenged provision. On the other hand, the NYSBOE can claim no harm resulting from the issuance of a preliminary injunction. Even assuming, *arguendo*, that enjoining the enforcement of the challenged provision would slightly harm the election process (which it would not), that harm would not outweigh the diminution in the Plaintiffs' speech rights. Accordingly, the balance of equities favors the Plaintiffs.

### D. The Public Interest Lies in Requiring the NYSBOE to Abide by the First Amendment.

"[S]ecuring First Amendment rights is in the public interest" when adjudicating preliminary relief. N.Y. Progress & Protection PAC v. Walsh, 733 F.3d 483, 488 (2nd Cir. 2013) (reversing, and mandating entry of preliminary injunction barring enforcement of speech-restrictive campaign finance statute). The health and well-being of a democracy depends upon choice at the ballot box. Enjoining the enforcement of the challenged provision will result in greater access to the ballot, without fear of overwhelming the ballot with candidates who have no legitimate level of support, because the essential bulwark against alleged "ballot clutter" is the high signature requirements of Election Law §6-142, that are not challenged here.

Furthermore, the public interest is served by requiring the NYSBOE to act within the limits of the First Amendment. *Cf.* ACLU v. Reno, 31 F.Supp.2d 473, 498 (E.D.Pa. 1999) ("[T]he public interest is not served by the enforcement of an unconstitutional law.") Therefore, the public interest will be strongly served by this Court issuing the requested injunction.

**E. Plaintiffs Should Be Excused From Posting Security in This Public Interest Action.**

Finally, Fed.R.Civ.Proc. Rule 65(c) requires a party granted a preliminary injunction to post security "in an amount that the court considers proper" to guard against the costs and damages of a wrongly entered order. The Court has "wide discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm." Doctor's Assocs. V. Distajo, 107 F.3d 126, 136 (2nd Cir. 1997), internal quotation omitted. In this dispute, the proper amount is zero.

Courts in this circuit waive the security requirement where the litigation challenges government action in the public interest. *See, e.g.,* Pharmaceutical Soc. of N.Y. v. N.Y. Dep't of Soc. Servs., 50 F.3d 1168, 1175 (2nd Cir. 1995) (affirming waiver of security in the public interest where preliminary relief was sought by professional organization acting on behalf of indigent Medicaid recipients); Kermani v. N.Y. State Bd. of Elections, 487 F.Supp.2d 101, 116 (N.D.N.Y. 2006) (waiving the requirement in First Amendment challenge to campaign finance statute "given the important constitutional and public policy issues arising in this matter"); Greenwich Bd. of Educ. V. Torok, No. 03-cv-1407, 2003 WL 22429016, at *3 n.7 (D.Conn. Oct. 22, 2003) (same where requirement could "discourage children and their parents from enforcing their federal rights"); Haitian Centers Council, Inc. v. McNary, 789 F.Supp. 541, 548 (E.D.N.Y. 1992) (waiving requirement due to "the important questions raised" by refugees' challenge to government restrictions upon access to counsel). This is such a suit. In it, the Plaintiffs seek to dismantle a speech-restrictive measure that stands between the LPNY, and all independent bodies, and the ballot. The Court should therefore determine that the Plaintiffs need not post security in order to obtain preliminary relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a preliminary injunction enjoining the Commissioners of the NYSBOE from enforcing the "duly qualified voter of the state" requirement of Election Law §6-140(1)(b) for any and all independent nominating petitions filed with the NYSBOE or any local board of elections in 2022, pending the resolution of this action.

THE LAW OFFICE OF GARY L. DONOYAN

By: Gary L. Donoyan (GD-7542)
Attorneys for Plaintiffs
565 Plandome Road, #209
Manhasset, New York 11030
(516) 312-8782
gdonoyan@garydonoyanlaw.com