UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
WILLIAM K. SCHMIDT, candidate of the
Libertarian Party for the Office of Comptroller of
the State of New York; SAMUEL SCOTT
ERICKSON, a United States citizen and Illinois
resident; WILLIAM CODY ANDERSON, as
Chair and de facto President and on behalf of the
Libertarian Party of New York, an independent              No. 22-CV-2210-BMC
body and unincorporated association; and DIANE
SARE, candidate of the LaRouche Independent
Party for the office of United States Senator from
the State of New York,

                            Plaintiffs,

        -against-

PETER S. KOSINSKI, DOUGLAS A.
KELLNER, ANDREW J. SPANO, and
ANTHONY J. CASALE, in their official
capacities as Commissioners of the New York
State Board of Elections,

                            Defendants.

------------------------------------------------------------ X


## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
28 Liberty Street
New York, New York 10005
(212) 416-6211

EVA L. DIETZ
Assistant Attorney General
    of Counsel

# TABLE OF CONTENTS

**Page (s)**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF THE CASE........................................................................................ 2

    A.  New York's Authentication Requirement for Independent Nominating Petitions ...... 2

    B.  The 2022 Election Cycle ............................................................................. 3

    C.  The Instant Matter ...................................................................................... 4

ARGUMENT ................................................................................................................ 5

PLAINTIFFS FAIL TO MEET THE STANDARDS FOR A PRELIMINARY INJUNCTION ... 5

    A.  The Equities and Public Interest Weigh Against a Preliminary Injunction ................ 6

    B.  Plaintiffs Have Failed to Make a Strong Showing of Irreparable Harm .................... 11

    C.  Plaintiffs Do Not Have a Substantial Likelihood of Success on the Merits .............. 11

    D.  Plaintiff's Reliance on a Moot Decision is Misplaced............................................... 19

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Anderson v. Celebrezze,
460 U.S. 780 (1983)................................................................................................11

Beal v. Stern,
184 F.3d 117 (2d Cir. 1999).....................................................................................6

Buckley v. American Const. Law Fdn.,
525 U.S. 182 (1999).........................................................................................13, 14

Bullock v. Carter,
405 U.S. 134 (1972)................................................................................................15

Burdick v. Takushi,
504 U.S. 428 (1992)..............................................................................11, 12, 14, 15

Clingman v. Beaver,
544 U.S. 581 (2005)................................................................................................12

Conservative Party of New York State v. New York State Board of Elections,
No. 10 Civ. 6923, 2010 WL 4455867 (S.D.N.Y. Oct. 15, 2010) ...........................10

Diaz v. Silver,
*932 F. Supp. 462 (E.D.N.Y. 1996) (three-judge court)* ............................................9

Doe v. New York Univ.,
666 F.2d 761 (2d Cir. 1981).....................................................................................6

eBay Inc. v. MercExchange, L.L.C.,
547 U.S. 388 (2006)..................................................................................................8

Elrod v. Burns,
427 U.S. 347 (1976)................................................................................................11

Environmental Servs., Inc. v. Recycle Green Servs., Inc.,
7 F. Supp. 3d 260 (E.D.N.Y 2014) .........................................................................11

Favors v. Cuomo,
881 F. Supp. 2d 356 (E.D.N.Y. 2012) ......................................................................8

FC Online Marketing, Inc. v. Burke's Martial Arts, LLC,
No. 14 CV 3685, 2015 WL 4162757 (E.D.N.Y. July 8, 2015) ...............................11

Free Libertarian Party, Inc. v. Spano,
    314 F. Supp. 3d 444 (E.D.N.Y. May 18, 2018) ....................................................19

Germalic v. Commissioners,
    No. 10-CV-1317, 2011 WL 1303644 (N.D.N.Y. April 1, 2011)......................................16, 19

Green Party v. Weiner,
    No. 00 Civ. 6639, 2000 WL 1280913 (S.D.N.Y. Sept. 8, 2000) ...........................................8

Harkenrider v. Hochul,
    2022 WL 1236822 (April 27, 2022) ....................................................................4

Hessel v. Christie's Inc.,
    399 F. Supp. 2d 506 (S.D.N.Y. 2005)..................................................................10

Initiative & Referendum Inst. v. Secretary of State,
    241 F.3d 614 (8th Cir. 2001) .........................................................................17

Johnson v. Cuomo,
    595 F. Supp. 1126 (N.D.N.Y. 1984).............................................................13, 16, 19

Kaloshi v. New York City Bd. of Elections,
    No. 02 CV 4762, 2002 WL 31051530 (E.D.N.Y. Sept. 6, 2002), vacated on
    other grounds 69 Fed. App'x 17 (2013)..............................................................17

Krislov v. Rednour,
    226 F.3d 851 (7th Cir. 2000) ........................................................................18

L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
    No. 18-CV-1902, 2018 WL 2390125 (E.D.N.Y. May 25, 2018) ...........................................5

Labrake v. Dukes,
    96 N.Y.2d 913 (2001) ...............................................................................17

Lerman v. Bd. of Elec. of City of N.Y.,
    232 F.3d 135 (2d Cir. 2000)......................................................................14, 16

Libertarian Party of Virginia v. Judd,
    718 F.3d 308 (4th Cir. 2013) ........................................................................18

Libertarian Party of Virginia v. Virginia State Bd. of Elec.,
    No. 10-cv-615, 2010, 2010 WL 3732012 (E.D. Va. September 16, 2010),
    aff'd on other grounds 434 Fed. App'x 174 (4th Cir. 2011)............................................13

Merced v. Spano,
    No. 16-CV-3054, 2016 WL 3906646 (E.D.N.Y. July 14, 2016)..........................................19

Meyer v. Grant,
    486 U.S. 414 (1988)................................................................13, 14

Nader v. Blackwell,
    545 F.3d 459 (6th Cir. 2008) ...........................................................18

Nader v. Brewer,
    531 F.3d 1028 (9th Cir. 2008) .........................................................18

New York v. Actavis PLC,
    787 F.3d 638 (2d Cir. 2015)..............................................................6

Nken v. Holder,
    556 U.S. 418 (2009)...........................................................................6

Person v. New York State Bd. of Elections,
    467 F.3d 141 (2d Cir. 2006)............................................................15

Purcell v. Gonzalez,
    549 U.S. 1 (2006) ..............................................................................8

Redpath v. Spano,
    2020 WL 2747256 (2nd Cir. May 7, 2020) ....................................19

Respect Maine PAC v. McKee,
    622 F.3d 13 (1st Cir. 2010)...............................................................9

Reynolds v. Sims,
    377 U.S. 533 (1964)...........................................................................8

Roman v. Sincock,
    377 U.S. 695 (1964)...........................................................................9

Salinger v. Colting,
    607 F.3d 68 (2d Cir. 2010)................................................................8

SAM Party of New York v. Kosinski,
    No. 20-CV-323, 2021 WL 6061301 (S.D.N.Y. Dec. 22, 2021) ............16

Schulz v. Williams,
    44 F.3d 48 (2d Cir. 1994).........................................................12, 14

Silberberg v. Bd. of Elec. of the State of N.Y.,
    216 F. Supp. 3d 411 (S.D.N.Y. 2016)................................................8

Stagg P.C. v. U.S. Dep't of State,
    158 F. Supp. 3d 203 (S.D.N.Y. 2016)..........................................8, 11

Storer v. Brown,
    415 U.S. 724 (1974)......................................................................................14

Timmons v. Twin Cities Area New Party,
    520 U.S. 351 (1997)..............................................................................12, 14

Tough Traveler, Ltd. v. Outbound Prods.,
    60 F.3d 964 (2d Cir. 1995)..........................................................................11

U.S. v. Munsingwear,
    340 U.S. 36 (1950)......................................................................................19

Wada Marketing Grp. LLC v. Ven-Co Produce, Inc.,
    No. 11 Civ. 3052, 2011 WL 5545963 (S.D.N.Y. Aug. 9, 2011) ............10

Walt Disney Productions v. Basmajian,
    600 F. Supp. 439 (S.D.N.Y. 1984) ............................................................10

Wash. State Grange v. Wash. Republican Party,
    552 U.S. 442 (2008)....................................................................................18

Weinberger v. Romero-Barcelo,
    456 U.S. 305 (1982)......................................................................................6

Westermann v. Nelson,
    409 U.S. 1236 (1972)....................................................................................8

Winter v. Natural Res. Defense Council, Inc.,
    555 U.S. 7 (2008)......................................................................................5, 6

Zobel v. New York State Bd. of Elections,
    254 A.D. 2d 520 (3d Dep't 1998) ..............................................................15

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I .............................................................................. passim

**STATE STATUTES**

N.Y. Election Law
    § 1-104(3)......................................................................................................2
    § 1-104(12)....................................................................................................2
    § 5-102(1)....................................................................................................16
    § 6-132 ..........................................................................................14, 16, 17
    § 6-132(2)....................................................................................................16
    § 6-138(1)......................................................................................................2
    § 6-140 ..........................................................................................2, 3, 9, 15
    § 6-140(1)....................................................................................7, 13, 17, 19

§ 6-140(1)(a) ...................................................................................2
§ 6-140(1)(b) ............................................................. passim
§ 6-140(2) ...................................................3, 7, 13, 14
§ 6-142 ..............................................................................2
§ 6-154 ............................................................................12
§ 6-154(1) ...........................................................................3
§ 6-154(2) ...........................................................................3
§ 16-100 ..................................................................... passim
§ 17-122(4) ................................................................3, 15
§ 17-122(7) ................................................................3, 15
§ 17-122(8) ................................................................3, 15

**MISCELLANEOUS AUTHORITIES**

N.Y. Political Calendar,
    https://www.elections.ny.gov/NYSBOE/law/2022PoliticalCalendar.pdf ................................3

Defendants Peter S. Kosinski, Douglas A. Kellner, Andrew J. Spano, and Anthony J. Casale, in their official capacities as Commissioners of the New York State Board of Elections, respectfully submit this memorandum of law, as well as the accompanying Declaration of Kristen Zebrowski Stavisky ("Stavisky Decl."), in opposition to Plaintiffs' motion for a preliminary injunction (ECF No. 6).

## PRELIMINARY STATEMENT

For more than one hundred years, New York has required each signature on a nominating petition for an independent candidate to be verified by a witness, to help ensure the truthfulness of the signatories' representations as to their voter registration and residence. For at least the last forty years, such a witness could be either a New York registered voter, a notary public or a commissioner of deeds. The Plaintiffs in this action are: (i) two independent candidates in the general election scheduled to take place in New York on November 8, 2022; (ii) the Chair of an independent body; and (iii) a proposed out-of-state witness. They allege that the requirement that witnesses to independent nominating petitions be registered voters infringes on their First Amended rights.

Yet despite the long-standing nature of the requirement at issue, Plaintiffs did not file the instant lawsuit until the day before the commencement of the six-week period mandated for collecting signatures on independent nominating petitions for the 2022 election cycle. As a result of Plaintiffs' long delay, the preliminary injunction they now seek would cause disruption and confusion to election procedures that are already in progress. This outcome would be contrary to the public interest and weighs the equities substantially against the granting of a preliminary injunction. Plaintiffs' delay in seeking such relief also rebuts any claim of irreparable harm, clearly

far short of the strong showing of such harm required where the preliminary relief sought would effectively give Plaintiffs all the relief they ultimately seek in this year's election.

In short, Plaintiffs have not shown that the equities and public interest favor a preliminary injunction, which alone defeats a preliminary injunction, nor have they shown that they would suffer substantial irreparable harm, or that there is a substantial likelihood that they will succeed on the merits. Therefore, Plaintiffs' motion for a preliminary injunction should be denied.

## STATEMENT OF THE CASE

A. New York's Authentication Requirement for Independent Nominating Petitions

In the year in which a governor is elected, New York recognizes as a "party" any political organization that at the last preceding election for governor received at least two percent of the total votes cast for its candidate for governor, or 130,000 votes, whichever is greater. N.Y. Election Law § 1-104(3). An organization or group that nominates candidates for office but has not qualified as a party is termed an "independent body." Id. § 1-104(12). Such independent nominations for public office are made by petitions containing the signatures of registered voters of the political unit for which the nomination is made. Id. § 6-138(1). The number of signatures required depends on the type of unit involved. Id. §6-142.

The form of independent nominating petitions is prescribed by Section 6-140 of the New York Election Law. It requires each signatory to state, in addition to the names of the candidate and the candidate's independent body, that the signatory is a registered voter in the political unit for which the nomination is being made and has truly stated a present place of residence. Id. § 6-140(1)(a). The form also includes a requirement that each petition include either (1) a signature authentication statement by a witness who is a "duly qualified voter of the state," Id. § 6-140(1)(b); or (2) in the alternative, a signature authentication statement by a notary public or commissioner

2

of deeds, Id. § 6-140(2).  Any petition that is in the prescribed form and appears to contain the requisite number of "authenticated" signatures "shall be presumptively valid," Id. § 6-154(1), but may be challenged within three days after it is filed by any registered voter, Id. § 6-154(2).

The requirement that nominating petition signatures be authenticated has been a part of the New York Election Law for over a hundred years, although long ago such authentication could only be provided by notaries or other officers qualified to administer oaths.  N.Y. L. 1899, Ch. 363.  Since at least 1976, when the Election Law was recodified, signatures can now also be authenticated by duly qualified voters of the state. N.Y. L. 1976, Ch. 233, § 1 (codified as N.Y. Election Law § 6-140).

The purpose of this long-standing signature authentication requirement has been to strengthen the accuracy and verifiability of the signatories' representations and thereby improve the likelihood that the signatures that by law are presumed to be valid are in fact valid.  See Stavisky Decl. ¶¶ 14-23. The authentication requirement also assists the management of elections in that (a) it enables the rapid verification of the witness' name and address in the extremely short time in which petitions must be processed and any challenges determined; (b) it ensures that the witness will be subject to subpoena in the event of litigation over petition signatures; and (c) it ensures that the witness will be subject to enforcement of the criminal penalties to which they are subject.  Id.; see also N.Y. Election Law § 17-122(4), (7) and (8).

B.  The 2022 Election Cycle

A general election will take place in New York State on November 8, 2022, and the preceding primary election is scheduled for June 28, 2022. See 2022 N.Y. Political Calendar,

available at https://www.elections.ny.gov/NYSBOE/law/2022PoliticalCalendar.pdf.[1] The relevant dates and deadlines applicable to every election cycle in New York can be found in the New York Election Law, as well as the political calendar published each year by the New York State Board of Elections. See Stavisky Decl. ¶ 8.

The Board of Elections published the political calendar for the 2022 election cycle on its website in January 2022, and the dates set forth in the calendar are set by statute. Id. Specifically, the first day for signing independent nominating petitions was April 19, 2022. Id. The petition signing period presently ends on May 31, 2022, and the petitions must be filed between May 24-31, 2022. Id.[2]

C.  The Instant Matter

Plaintiffs are the Chair and de facto President of the Libertarian Party of New York ("Libertarian Party"), the Libertarian Party's candidate for New York State Comptroller in the election to be held on November 8, 2022, an out-of-state supporter of the Libertarian Party's candidate for Comptroller, and the LaRouche Independent Party's ("Larouche Party") candidate for United States Senator in the November 8, 2022 election. See Compl. (ECF No. 1) ¶¶ 1, 5-8. Both the Libertarian Party and the LaRouche Party are independent bodies. Id. ¶ 1.

Plaintiffs filed the instant lawsuit on April 18, 2022. Id. at p. 1. They challenge the constitutionality, facially and as applied to them, of the requirement in N.Y. Election Law § 6-140(1)(b) that witnesses to independent nominating petitions be duly qualified voters in New York, alleging that this provision violates the First Amendment.  Id. ¶¶ 2, 39-46.  They contend that the

---

[1] On April 27, 2022, the New York State Court of Appeals in Harkenrider v. Hochul, 2002 WL 1236822 (2022), declared New York's State Senate and Congressional lines unconstitutional. As a result, the date of the primary for those offices will change. See Stavisky Decl. ¶ 19.

[2] It is presently unclear what effect, if any, the decision in Harkenrider will have on the independent nominating process for the 2022 election cycle, including the dates for circulating independent nominating petitions. See Stavisky Decl. ¶ 19.

requirement (a) requires non-residents (or others not registered to vote in New York) who collect petition signatures to be accompanied by a duly qualified New York voter to act as the witness, which reduces their efficiency, Id. ¶¶ 29-31, (b) effectively prohibits independent bodies from hiring out-of-state paid witnesses, which creates a monopoly for New York "professional witnesses," thereby increasing the cost of independent petition signature drives, Id. ¶¶ 32-33, and (c) reduces the quality of witnesses that independent bodies can use because out-of-state witnesses have in the past generated a "higher percentage of valid signatures" than "the few" in-state professional and volunteer witnesses, Id. ¶ 34. According to Plaintiffs, the requirement that witnesses to independent nominating petitions be duly qualified voters in New York thus makes it more difficult for them to disseminate their political views. Id. ¶ 35. They seek a declaratory judgment that § 6-140(1)(b) is unconstitutional, and a permanent injunction against its enforcement, to the extent it prohibits "non-duly qualified New York voters from serving as witnesses to independent nominating petitions." Id. at pp. 13-14.

In this motion, Plaintiffs further seek a preliminary injunction that would effectively enjoin enforcement of § 6-140(1)(b) for the remainder of the petition gathering process for the 2022 election cycle. However, for the reasons set forth below, Plaintiffs fail to satisfy the requirements to obtain such extraordinary relief, and their motion for a preliminary injunction should therefore be denied.

## ARGUMENT
## PLAINTIFFS FAIL TO MEET THE STANDARDS
## FOR A PRELIMINARY INJUNCTION

A "preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Defense Council, Inc., 555 U.S. 7, 24 (2008). Plaintiffs bear the burden of establishing (1) that they are likely to succeed on the merits, (2) that they are likely to suffer

irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. Id. at 20. The final two factors—the balance of the equities and the public interest—"merge" when the Government is the opposing party." L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y., No. 18-CV-1902, 2018 WL 2390125, at *13 (E.D.N.Y. May 25, 2018) (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)).

In addition, the Second Circuit holds the movant to a heightened standard when, as here, (i) an injunction is "mandatory" (i.e., altering the status quo, rather than maintaining it), or (ii) it "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." New York v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015). In such cases, the movant must show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm, in addition to that the preliminary injunction is in the public interest. See id. (quoting Beal v. Stern, 184 F.3d 117, 123 (2d Cir. 1999), and Doe v. New York Univ., 666 F.2d 761, 773 (2d Cir. 1981)).

Plaintiffs cannot satisfy these rigorous standards. Among other issues, the equities and public interest factors weigh heavily against granting injunctive relief. Nor can Plaintiffs make a strong showing of irreparable harm or a clear likelihood of success on the merits. Their motion for a preliminary injunction should therefore be denied.

A. The Equities and Public Interest Weigh Against a Preliminary Injunction

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)). Plaintiffs here have not shown that the equities or the public interest favor the drastic immediate injunctive relief they seek.

Indeed, both of these factors weigh heavily against such relief, irrespective of the likelihood of ultimate success or irreparable harm. See Winter, 555 U.S. at 31 fn. 5 (preliminary injunction was abuse of discretion, even if plaintiffs were correct on underlying claim).

The period for collecting petition signatures for the 2022 election cycle in New York is presently from April 19, 2022 until May 31, 2022. See Stavisky Decl. ¶ 8. By the time this preliminary injunction motion is heard on May 2, 2022, that period will be one-third over. The supporters of the various candidates, including but not limited to the Libertarian Party and the LaRouche Party, have already printed their petitions and spent days if not weeks collecting signatures under the present witness requirements of § 6-140(1) and (2). To change the rules in the middle of the petition collecting process would not only require the Board of Elections to propose and the Court to approve a new form of petition, which the Libertarian Party and the LaRouche Party could then print and begin circulating, but it would put all the candidates of other independent bodies in the position of deciding whether to (a) rush to print their own new petitions (at substantial cost) and enlist new witnesses from other states or countries to take advantage of the changed rule or (b) continue with their old petitions and witnesses despite the serious disadvantage it would put them to in relation to the Libertarian Party and the LaRouche Party. See Stavisky Decl. ¶¶ 9-10.

It is unknown, and unknowable, how many independent candidates are presently collecting signatures. These candidates have been operating under the existing rules, and many of them might never learn of the mid-stream change to the rules that the requested injunction would represent, which would prejudice them and compromise the fairness of the petitioning process. The requested injunction would also sow considerable confusion, as independent nominating petitions for local offices are certified by the 58 local boards of election throughout the state and challenges to such petitions under Article 16 of the Election Law are filed in and decided by 62 different State

Supreme Courts. It would turn an orderly process that has been in place for more than 40 years into an uncertain and unfair chaos that would not be in the public interest. Id. ¶¶ 10-11.

For any preliminary injunction, "the court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)); see also Stagg P.C. v. U.S. Dep't of State, 158 F. Supp. 3d 203, 210 (S.D.N.Y. 2016) ("[e]ven assuming . . . a substantial likelihood of success" on the First Amendment claim, "the balance of equities and the public interest both require the denial of this preliminary injunction"). In elections in particular, "the paramount interest in fair and legal voting counsels caution rather than haste." Favors v. Cuomo, 881 F. Supp. 2d 356, 371 (E.D.N.Y. 2012) (three-judge court); Silberberg v. Bd. of Elec. of the State of N.Y., 216 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2016) ("Regardless of the potential merits of the plaintiffs' claim, granting a preliminary injunction at this late stage is a recipe for confusion[.]").

"Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls." Purcell v. Gonzalez, 549 U.S. 1, 4-5 (2006). As the Supreme Court has cautioned, in the context of an apportionment case in which the statute in question had already been held unconstitutional,

> [i]n awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree.

Reynolds v. Sims, 377 U.S. 533, 585 (1964); see also Westermann v. Nelson, 409 U.S. 1236, 1236-37 (1972) (preliminary injunction denied where election machinery was under way, "not because

the cause lacks merit but because orderly election processes would likely be disrupted by so late an action"); Green Party v. Weiner, No. 00 Civ. 6639, 2000 WL 1280913, at *4 (S.D.N.Y. Sept. 8, 2000) (preliminary injunction denied where to order such relief would cause "disruption of the state's orderly election process"); Diaz v. Silver, 932 F. Supp. 462, 466-68 (E.D.N.Y. 1996) (three-judge court) (preliminary injunction in election case denied on public interest grounds, despite assumption *of* likelihood of success and irreparable harm, where it would interfere with "'election machinery . . . already in gear,'" (quoting Roman v. Sincock, 377 U.S. 695, 709-10 (1964)).

In Respect Maine PAC v. McKee, 622 F.3d 13 (1st Cir. 2010), the plaintiffs sought an injunction pending appeal from a denial of a preliminary injunction against certain limits imposed by Maine on campaign expenditures and contributions. In denying the motion, the First Circuit explained the balancing of the plaintiffs' alleged harm against the public interest:

> Under the balancing test, we consider the considerable harm that an emergency injunction would cause the many candidates. . . who have relied on the challenged provisions. We also note the harm to the public interest from the chaos that will ensue if the Maine election laws, which have been in place since 1996, are invalidated by a court order in the crucial final weeks before an election.

Id. at 16. The same concerns arise in the present case, in which Plaintiffs seek to change in mid-stream the rules that have governed a vital part of the election process for decades – the collection of petition signatures – upon which other candidates are already relying.

Moreover, the fact that this motion will not be heard until after the petitioning period has already begun is entirely Plaintiffs' doing. The New York voter witness requirement has been a part of the New York Election Law for more than forty years in substantially its present form. See N.Y. L. 1976, Ch. 233, § 1 at 85-86 (recodified as § 6-140). Indeed, the Libertarian Party has been successfully circulating petitions in compliance with the New York voter witness requirement and

has thereby placed candidates on the New York ballot throughout that entire period. See Compl. ¶ 9. Thus, there is no question that the Libertarian Party has been aware of this requirement for decades. Moreover, the Libertarian Party has been aware that this requirement would apply to their candidates since November 2020, which is when the Libertarian Party lost its "party" status "and since then the [Libertarian Party] has been an independent body once again." Id. ¶ 18. Finally, the State Board of Elections published the political calendar for the 2022 election cycle on its website in January 2022, including the dates for petitioning for independent nominations, which are set by statute. See Stavisky Decl. ¶ 8. Thus, political parties and candidates, including Plaintiffs, have known for months, if not longer, that the first day to circulate independent nominating petitions would be April 19, 2022.

Yet Plaintiffs waited until April 18, 2022, one day before the commencement of the petition gathering period, to file their lawsuit. This extreme delay not only negates Plaintiffs' assertion of irreparable harm, see infra at Section B, it is also fatal to their request for a preliminary injunction under the balancing of the equities requirement. See Conservative Party of New York State v. New York State Board of Elections, No. 10 Civ. 6923, 2010 WL 4455867, at *2 (S.D.N.Y. Oct. 15, 2010) (no need to reach merits on preliminary injunction motion, where plaintiffs have "slept on their rights" and waited until shortly before election to seek onerous and confusing relief); Wada Marketing Grp. LLC v. Ven-Co Produce, Inc., No. 11 Civ. 3052, 2011 WL 5545963, at *4 (S.D.N.Y. Aug. 9, 2011) ("Critical to a determination of irreparable injury is the prompt seeking of relief"); Hessel v. Christie's Inc., 399 F. Supp. 2d 506, 520-21 (S.D.N.Y. 2005) (denying preliminary injunction because "the balance of hardships does not tip decisively in" favor of a movant that could have filed its "application two months ago"); Walt Disney Productions v.

Basmajian, 600 F. Supp. 439, 442 (S.D.N.Y. 1984) (equities favor defendants where plaintiff sued shortly before the event complained of; preliminary injunction denied).

    B. <u>Plaintiffs Have Failed to Make a Strong Showing of Irreparable Harm</u>

Plaintiffs' delay in bringing suit also undercuts their claim of irreparable harm. "Delay in seeking a preliminary injunction can weaken a claim of irreparable harm because 'the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief.'" <u>Environmental Servs., Inc. v. Recycle Green Servs., Inc.</u>, 7 F. Supp. 3d 260, 279 (E.D.N.Y 2014) (quoting <u>Tough Traveler, Ltd. v. Outbound Prods.</u>, 60 F.3d 964, 968 (2d Cir. 1995); <u>see also</u> <u>FC Online Marketing, Inc. v. Burke's Martial Arts, LLC</u>, No. 14 CV 3685, 2015 WL 4162757, at *32 (E.D.N.Y. July 8, 2015) ("In assessing irreparable harm, courts should generally consider any undue delay by the plaintiff in seeking the preliminary injunction" and collecting cases).

The loss of First Amendment freedoms is often described as constituting irreparable harm. <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976). However, Plaintiffs' undue delay in moving for relief and the disruption such relief would cause to the election process already under way are important factors in the weighing of the equities among the parties and the public interest. When those factors favor defendants, as they do here, preliminary injunctive relief must be denied, notwithstanding irreparable harm or even likelihood of ultimate success. <u>See</u> <u>Stagg</u>, 158 F. Supp. 3d at 210 (despite demonstrated irreparable harm from First Amendment violation, and even assuming a substantial likelihood of success, "the balance of the equities and the public interest both require denial of this preliminary injunction").

    C. <u>Plaintiffs Do Not Have a Substantial Likelihood of Success on the Merits</u>

Election regulation laws are analyzed under a balancing test derived from <u>Anderson v.</u> <u>Celebrezze</u>, 460 U.S. 780 (1983) and <u>Burdick v. Takushi</u>, 504 U.S. 428 (1992). Laws or regulations

that impose <u>severe</u> burdens on associational rights must be narrowly tailored to serve a compelling state interest, but when they impose <u>lesser</u> burdens, "'a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'" <u>Clingman v. Beaver</u>, 544 U.S. 581, 586-87 (2005) (quoting <u>Timmons v. Twin Cities Area New Party</u>,520 U.S. 351, 358 (1997)); <u>accord</u> <u>Schulz v. Williams</u>, 44 F.3d 48, 56 (2d Cir. 1994) (citing <u>Burdick</u>, 504 U.S. at 434). We therefore look first at the alleged severity of Plaintiff's claimed injury.

That the New York voter witness requirement does not burden Plaintiffs severely is apparent from the success of the Libertarian Party in gaining access to the ballot in New York under the very petition witness requirements it now challenges. As Plaintiffs boast, "[s]tarting in 1974, the [Libertarian Party] has run candidates for statewide office (including U.S. Senate and U.S. Presidential electors) every two years except for 1986, the only political organization in the state without recognized "party" status to do so." <u>See</u> Compl. ¶ 9. For more than forty years, it has successfully obtained enough signatures to become an enduring presence on New York ballots. Its record of success in collecting signatures and placing its candidates on the New York ballot under the present law demonstrates that the burden is not severe and that the challenged statute should be judged on a rational basis standard rather than strict scrutiny as Plaintiffs argue. In <u>Schulz</u>, the Second Circuit reversed the district court's imposition of strict scrutiny by looking at "how independent bodies have fared in the past in their attempts to gain ballot access in New York." <u>Schulz</u>, 44 F.3d at 56. Concluding that it must look, <u>inter alia</u>, at the burden imposed on plaintiff in light of the state's overall election scheme, it found that the presumptive validity accorded to petitions by Election Law § 6-154 had made the ballot in New York accessible to third-party contenders, and that the challenged burden "was not a hefty impediment to ballot access." <u>Id.</u> at 56-57.

In Meyer v. Grant, 486 U.S. 414 (1988), the Supreme Court held that the circulation of petitions in support of a ballot proposition, which Colorado law prohibited for pay, was "core political speech" because it involved "interactive communication concerning political change." Id. at 421-22. In Buckley v. American Const. Law Fdn., 525 U.S. 182 (1999), the Court repeated that characterization in reference to another Colorado statute, which was also aimed at petition circulators and required them to be registered voters. Id. at 186. The New York statute now at issue, however, is not aimed at the circulator of the petition, whom the Supreme Court expected to be engaged in the interactive communication with the potential signatories and the conveyance of a message, but rather at the witness whose job is to help assure valid petitions by authenticating the signatory's signature and representations. The witness requirement in § 6-140(1) neither prevents nor limits plaintiffs' right to convey their message, nor has it significantly denied them access to the ballot.

Plaintiffs complain here that solicitation by their preferred out-of-state petition circulators, including paid professionals, is made less efficient and/or more expensive by the need to have a qualified witness with them. See Compl. ¶¶ 29-34.[3] But such alleged inconvenience cannot be the basis for concluding a statute designed to ensure the validity of signatures is unconstitutional. See, e.g., Libertarian Party of Virginia v. Virginia State Bd. of Elec., No. 10-cv-615, 2010 WL 3732012, at *7 (E.D. Va. September 16, 2010), aff'd on other grounds 434 Fed. App'x 174 (4th Cir. 2011) (despite residency requirement for witnesses, candidate is free to communicate to voters and voters are free to express their support for him, "provided only that another person qualified to vote" is present when voters sign his petition); Johnson v. Cuomo, 595 F. Supp. 1126, 1130-31 (N.D.N.Y. 1984) (witness requirement in Election Law § 6-140(1) and (2) only affects witnessing of

---

[3] How plaintiffs calculate that having New York voters, whether volunteer or paid, witness petition signatures in New York is more expensive than transporting paid professional witnesses from other states is not clear.

signature, leaving persons not qualified to witness signatures "free to solicit signatures and engage in any other political activity;" preliminary injunction denied).

In Lerman v. Bd. of Elec. of City of N.Y., 232 F.3d 135 (2d Cir. 2000), the Second Circuit considered a requirement in a different New York Election Law provision (§ 6-132), governing party designating petitions, that witnesses be residents of the same political subdivision in which the office is to be voted. The court relied on Buckley and Meyer in finding that circulating petitions constituted "core political speech" and applied "exacting scrutiny." Id. at 146. As applied to Plaintiffs in the case at bar, the Libertarian Party's record of success in collecting signatures and placing its candidates on the New York ballot under the present law shows that the burden is not severe and that therefore the statute challenged should be judged on a rational basis standard, rather than strict or exacting scrutiny.

Whatever standard is applied, the importance of the witness requirements in New York's regulatory scheme is compelling. "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election-and campaign-related disorder." Timmons, 520 U.S. at 358. States retain the power to regulate their own elections and "'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" Burdick, 504 U.S. at 433 (quoting Storer v. Brown, 415 U.S. 724, 730 (1974)). The concern to which § 6-140(1)(b) and (2) respond has long been and still is that the representations of petition signatories as to their voter registration and residence – i.e., their qualifications to sign – be truthful and verifiable. See Schulz, 44 F.3d at 57-58 (requirements of signatory's election and assembly district and ward numbers is a reasonable way of accomplishing the state's legitimate interest "in assuring that the support demonstrated [by the petition signatures] is bona fide and not the product of fraud or

misrepresentation;" "the state is . . . entitled to take steps to ensure that elections are 'fair and honest'") (quoting <u>Burdick</u>, 112 S. Ct. at 2063).

In earlier times, the only witnesses permitted on New York independent nominating petitions were notaries public or other officers qualified to administer oaths because the signatory of a petition (then called a "certificate") was required to <u>swear</u> that he was "an elector" and had truly stated his residence. N.Y. Laws of 1899, Ch. 363. Since then, the oath requirement has been removed and the witness requirement expanded to include any New York qualified voters, but the present limitation still serves the significant state interest in preventing fraud and misrepresentation: (a) it enables the rapid verification of the witness' name and address in the extremely short time in which petitions must be processed; (b) it insures that the witness will be subject to subpoena in the event of litigation over petition signatures; and (c) it insures that the witness will be subject to enforcement of the criminal penalties to which they are subject. <u>See</u> Stavisky Decl. ¶¶ 14-23; <u>see also</u> N.Y. Election Law § 17-122(4), (7) and (8).

Plaintiffs now seek to eliminate these protections by permitting anyone to be a petition witness – non-voters, out-of-state residents, non-U.S. citizens – but "'a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies.'" <u>Person v. New York State Bd. of Elections</u>, 467 F.3d 141, 144 (2d Cir. 2006) (quoting <u>Bullock v. Carter</u>, 405 U.S. 134, 145 (1972)); <u>see also</u> <u>Zobel v. New York State Bd. of Elections</u>, 254 A.D. 2d 520, 522 (3d Dep't 1998) (requirement in § 6-140 that petitions include signers' and witnesses' town and city "serves the legitimate purpose of facilitating the discovery of fraud . . . and allows the rapid and efficient verification of signatures within the restrictive time periods imposed by the Election Law").

The witness requirement, by its terms, requires that a witness to an independent nominating petition be a "duly qualified voter of the State of New York." N.Y. Election Law § 6-140(1)(b). Since registration as a voter requires the registrant to be a resident of New York, id. § 5-102(1), it thus incorporates a New York residency requirement. The Complaint makes it clear that this state residency requirement is the gravamen of Plaintiffs' claim, since it allegedly prevents them from sending non-New York professional and volunteer circulators into New York to canvass for petition signatures without being accompanied by a New York registered voter. See Compl. ¶¶ 30-34. In Lerman, the Second Circuit held that a part of N.Y. Election Law § 6-132 that required a witness of a party designating petition to be a "resident of the political subdivision in which the office or position is to be voted for" violated the First Amendment. In considering the argument that a residence requirement ensured that the witness would be answerable to a subpoena, it concluded that since the Boards of Elections have statewide subpoena power, "the state's purpose is already served by the less burdensome requirements in section 6-132(2) that a petition witness (1) live anywhere within the State of New York, and (2) provide their residence address in an affidavit filed together with the petitions." Lerman, 232 F.3d at 150.

Since the plaintiffs in Lerman did not challenge these provisions, the court did not rule on their constitutionality, but other courts in the Second Circuit have dealt with the similar issue with respect to the statutory provision now before us, N.Y. Election Law § 6-140(1)(b). In Germalic v. Commissioners, No. 10-CV-1317, 2011 WL 1303644 (N.D.N.Y. April 1, 2011), the District Court held that "the residency requirement in section 6-140(1)(b) is narrowly tailored to serve the state's compelling interest of protecting the integrity of the electoral process and guarding against fraud." Id. at *3; see also SAM Party of New York v. Kosinski, No. 20-CV-323, 2021 WL 6061301, at *8 n. 12 (S.D.N.Y. Dec. 22, 2021) (finding that "plaintiffs do not explain why the witness residency

requirement is unconstitutional or why it imposes a severe burden on ballot access," and thus "the witness residency requirement is not unconstitutional, either by itself or in conjunction with the rest of New York's ballot access restrictions."); Johnson, 595 F. Supp. at 1130 (requirement in N.Y. Election Law § 6-140(1) that petition witness be a qualified voter of the State and qualified to sign the petition held "a reasonable one that helps protect the integrity of the state nominating process with a proper additional safeguard in the signature canvassing. It prevents the signature canvassing from becoming free-wheeling and irresponsible"). The New York courts agree. See Labrake v. Dukes, 96 N.Y.2d 913, 915 (2001) ("integrity of the nominating process by assuring that a subscribing witness is subject to subpoena in a proceeding challenging the petition . . . is satisfied by the dual requirement that the witness's address be disclosed and that the witness be a resident of the State").

In Kaloshi v. New York City Bd. of Elections, No. 02 CV 4762, 2002 WL 31051530 (E.D.N.Y. Sept. 6, 2002), vacated on other grounds 69 Fed. App'x 17 (2013), this Court found the requirement in N.Y. Election Law § 6-132 that party designating petition witnesses be party members (and implicitly registered voters) to be not sufficiently narrowly tailored to advance the interest of ensuring integrity and preventing fraud in the electoral process, because it adversely impacted "millions of unregistered New Yorkers," id. at *11, thus suggesting that it would have been constitutionally acceptable if limited to New York residents.

While the Second Circuit has not ruled on the constitutionality of a state residency requirement for either the witnesses or circulators of petitions, other Circuits have split. In Initiative & Referendum Inst. v. Secretary of State, 241 F.3d 614 (8th Cir. 2001), the Eighth Circuit held that a state residency requirement similar to New York's allowed North Dakota's Secretary of State "to protect the petition process from fraud and abuse by ensuring that circulators answer

to the Secretary's subpoena power." Id. at 616; but cf. Libertarian Party of Virginia v. Judd, 718 F.3d 308, 317-18 (4th Cir. 2013) (state residency requirement for petition witnesses not sufficiently tailored to justify burden on First Amendment rights; courts have "looked with favor" on requirement that witnesses agree to submit to jurisdiction for subpoena enforcement); Nader v. Blackwell, 545 F.3d 459, 476-77 (6th Cir. 2008) (registered voter witness requirement found unconstitutional, but case dismissed on qualified immunity grounds); Nader v. Brewer, 531 F.3d 1028, 1037-38 (9th Cir. 2008) (state failed to show that state residency requirement was narrowly tailored; summary judgment granted to plaintiffs); Krislov v. Rednour, 226 F.3d 851, 866 (7th Cir. 2000) (registered voter and residency requirement not narrowly tailored; summary judgment granted to plaintiffs). None of these cases that ruled against the state's witness requirements were decided on preliminary injunction motions.

Since there is a split in federal circuits on the constitutionality of state residency witness requirement, the Second Circuit has not ruled on the issue but district courts in the Circuit have upheld their constitutionality, and anything short of doing away with the state residency witness requirement would not serve the plaintiffs' professed interest, plaintiffs have not demonstrated a clear or substantial likelihood of success. To the extent the Court needs to reach this issue, a preliminary injunction motion should be denied.

Plaintiffs also describe their case as a facial challenge. See Compl. ¶ 39. Facial challenges, however, are generally available in the First Amendment context only if a plaintiff can demonstrate either that (1) "the law is unconstitutional in all of its applications," or (2) "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Wash. State Grange v. Wash. Republican Party, 552 U.S. 442, 449 & n. 6 (2008) (citations omitted). As we have seen, plaintiffs' constitutional challenge fails as applied to them. In addition,

the constitutionality of N.Y. Election Law § 6-140(1) has been upheld by courts in various applications. See Germalic, 2011 WL 1303644, at *3; Johnson, 595 F. Supp. at 1130-31. Plaintiff's facial challenge must fail.

D. Plaintiff's Reliance on a Moot Decision is Misplaced

Plaintiffs rely heavily on an Eastern District case from 2018 which held that the witness residency requirement in § 6-140(1)(b) infringed on the First Amendment. Free Libertarian Party, Inc. v. Spano, 314 F. Supp. 3d 444 (E.D.N.Y. May 18, 2018). However, that decision was subsequently vacated by the Second Circuit on mootness grounds. Redpath v. Spano, 2020 WL 2747256 (2d Cir. May 7, 2020). Had this mootness not occurred, Defendants fully expect that the decision would have been overturned on the merits because it was wrongly decided for the reasons set forth in Section C above. Significantly, the Circuit's order vacating the underlying decision due to mootness unattributable to the appellant specifically means that it has no value and thus cannot be relied on as the vacatur has the effect of "clear[ing] the path for future relitigation of the issues." U.S. v. Munsingwear, 340 U.S. 36, 40 (1950).

In any event, Plaintiffs fail to mention that the district court in that case had previously denied a motion for a preliminary injunction. Merced v. Spano, No. 16-CV-3054, 2016 WL 3906646 (E.D.N.Y. July 14, 2016). In its decision, the court found that "Plaintiff has demonstrated a likelihood that the witness requirement is overbroad." Id. at *2. The court nevertheless denied the motion for a preliminary injunction based on the remaining elements – irreparable harm, balance of the equities and public interest – which the court determined were "intertwined." Id. With respect to irreparable harm, the court found that even though the loss of First Amendment freedoms constitutes irreparable injury, "a plaintiff who plays a role in the imposition of the injury does not come to the table with clean hands." Specifically, the court determined that plaintiffs had

failed to offer a "satisfactory explanation" for challenging a decades-old law <u>one week</u> before the start of the petitioning period (significantly earlier than here) and noted that "[a] preliminary injunction is an extraordinary remedy, but the courthouse is not an emergency room – certainly not for such a contrived crisis." <u>Id.</u>

The court further found that the requested preliminary injunction would undermine "the public interest in fairness to all electoral candidates, who may not discover that the rules have been changed or may not have the time or means available to reframe or expand their campaigns so as to dispense with the current witness requirement, to name just a few possible unfair outcomes. By extension, a preliminary injunction would affect the entire electorate and possibly open a Pandora's Box of future litigation in order to sort out the election, post hoc." <u>Id.</u> at *3.

Finally, the court noted that "[w]here the public interest in denying the motion is particularly strong, that alone may counsel a denial of injunctive relief…This is such a case." <u>Id.</u> The same result should issue here.

## **<u>CONCLUSION</u>**

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction and grant such other and further relief as it deems to be just and proper.

Dated: April 29, 2022
New York, New York

Respectfully submitted,
LETITIA JAMES
Attorney General
State of New York
<u>Attorney for Defendants</u>

By: <u>/s/ *Eva L. Dietz*          </u>
Eva L. Dietz
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6211