```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
WILLIAM K. SCHMIDT, SAMUEL SCOTT                            :
ERICKSON, WILLIAM CODY ANDERSON,                            :   MEMORANDUM DECISION
and DIANE SARE,                                             :   AND ORDER
                                  Plaintiffs,               :
                                                            :   22-cv-2210 (BMC)
                    - against -                             :
                                                            :
PETER S. KOSINSKI, DOUGLAS A.                               :
KELLNER, ANDREW J. SPANO, and                               :
ANTHONY J. CASALE, in their official                        :
capacities as Commissioners of the New York                 :
State Board of Elections,                                   :
                                                            :
                                  Defendants.               :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiffs seek preliminary injunctive relief against the Commissioners of the New York State Board of Elections pursuant to the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are members of either the Libertarian Party of New York or affiliated libertarian groups. All, save Erikson, are New York residents. They challenge New York Election Law § 6-140(1)(b), believing it places an undue burden on their political speech. The law prevents individuals who are not duly qualified New York State voters, like Erikson, from acting as witnesses and collecting signatures for their candidates' petitions.

Plaintiffs' proposed preliminary injunction would prohibit the enforcement of the § 6-140(1)(b) in-state requirement and permit plaintiffs to replace the "duly qualified voter" language on the petition sheets. Based on the submissions of the parties, and oral argument held before the Court, plaintiffs' motion for a preliminary injunction is granted.

## BACKGROUND

Under New York law, a political "party" means

> any political organization which, excluding blank and void ballots, at the last preceding election for governor received, at least two percent of the total votes cast for its candidate for governor, or one hundred thirty thousand votes, whichever is greater, in the year in which a governor is elected and at least two percent of the total votes cast for its candidate for president, or one hundred thirty thousand votes, whichever is greater, in a year when a president is elected.

N.Y. Elec. L. § 1-104(3). Other entities, referred to as "independent bodies," may organize campaigns and nominate candidates by petition. Those petitions must bear a certain number of signatures, and the number depends on the position sought by the candidate. The law also requires that each page of a petition contain the declaration of a witness as to the signatures on that page, affirming that the witness is a "duly qualified voter of the State of New York." N.Y. Elec. L. § 6-140 ("Section 6-140").

Plaintiffs seek to have Schmidt's and Sare's names placed on the ballot pursuant to an independent petition, but without having a qualifying New York voter witness each page. Instead, they want witnesses who, at least in some instances, are not qualified New York voters. They claim that the voter registration requirement places an undue burden on their First Amendment Rights and will cause irreparable harm in Schmidt and Sare's upcoming races for Comptroller and State Senate.

The period for independent petitions in New York State began on April 19, 2022, and ends May 31, 2022. Plaintiffs filed the motion for a preliminary injunction on April 19, 2022.

## DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

2

balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

I. **Likelihood of Success on the Merits**

"Consideration of the merits is virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not the dispositive, factor." New York Progress and Prot. PAC v. Walsh, 733 F.3d 483 (2d Cir. 2013).

The Second Circuit has not squarely addressed the constitutionality of Section 6-140. But it did address a very similar geographic scope issue in Lerman v. Bd. of Elections, 232 F.3d 135 (2d Cir. 2000). The statute at issue in Lerman provided that petition signatures could be witnessed only by "resident[s] of the political subdivision in which the office or position is to be voted for." Lerman, 232 F.3d at 139 (quoting N.Y. Elec. Law § 6-132(2)). The Second Circuit found that this requirement "dramatically reduced the number of potential petition circulators available to advance" the favored candidate's "political message." Id. at 147. The Court held that this imposed a "severe burden" even though it did not expressly prohibit non-residents from circulating petitions. Accordingly, Lerman applied strict scrutiny to the political subdivision residency requirement imposed by the statute and found Section 6-132(2) facially unconstitutional.

The statute at issue in Lerman differs from the one challenged here only with respect to the geographical scope of the residency requirement. The statute in Lerman required that voters within the relevant political subdivision witness petition signatures, whereas Section 6-140 requires that the witnesses must be registered voters and residents of the State of New York. Although the Court in Lerman did not decide whether a state-wide residency requirement for witnesses would trigger strict scrutiny, almost all the courts that have reviewed such statutes

3

have found them unconstitutional, reasoning that they place a heavy burden on speech that fails the requirements of strict scrutiny review.  See Libertarian Party of Virginia v. Judd, 718 F.3d 308 (4th Cir. 2013) ("Indeed, a consensus has emerged that petitioning restrictions like [requiring petition witnesses be state residents] are subject to strict scrutiny analysis. . . . Residency restrictions bearing on petition circulators and witnesses burden First Amendment rights in a sufficiently severe fashion to merit the closest examination."); Yes on Term Limits v. Savage, 550 F.3d 1023, 1025, 1028 (10th Cir. 2008); Nader v. Blackwell, 545 F.3d 459, 473 (6th Cir. 2008) (law requiring witnesses to be Ohio residents violates First Amendment); Nader v. Brewer, 531 F.3d 1028, 1038 (9th Cir. 2008) (same under Arizona law); Krislov v. Rednour, 226 F.3d 851, 866 (7th Cir. 2000) (same under Illinois law); Free Libertarian Party, Inc. v. Spano, 314 F. Supp. 3d 444 (E.D.N.Y. 2018) (finding that Buckley v. Am. Constitutional Law Found., 525 U.S. 182 (1999), "virtually mandates the conclusion that at least the 'duly registered voter' requirement of Section 6-140(1)(b) is unconstitutional."), vacated as moot, Redpath v. Spano, No. 18-2089, 2020 WL 2747256 (2d Cir. May 7, 2020); Libertarian Party of Connecticut v. Denise Merrill, No. 15-cv-1851, 2016 WL 10405920 (D. Conn. Aug. 9, 2016); Green Party of Pa. v. Aichele, 89 F. Supp. 3d 723, 742 (E.D. Pa. 2015); but see Germalic v. Comm'rs State Bd. of Elections, No. 10-cv-1317, 2011 WL 1303644, at *3 (N.D.N.Y. Apr. 1, 2011) (section 6-140(1)(b) was "narrowly drawn to serve the states compelling interests and provide[s] a reasonable alternative to ease the burden on [the] plaintiff's First and Fourteenth amendment rights"), aff'd on other grounds sub nom., Germalic v. New York Bd. of Elections Comm'rs, 466 F. App'x 54 (2d Cir. 2012).

      The New York statute is no different.  Circulating petitions "clearly constitute[s] core political speech," because it "of necessity involves both the expression of a desire for political

4

change and a discussion of the merits of the proposed change." Lerman, 232 F.3d at 146. Because it restricts who may witness signatures on nominating petitions, Section 6-140(1)(b) functions to place a substantial burden on speech and is subject to strict scrutiny.

Under this standard, defendants have failed to demonstrate a compelling interest as to why only qualified New York voters can be witnesses as compared to individuals from out of state. There is always a risk that any witness could fake signatures, but defendants have not shown why that risk is lower if only New York voters are witnesses. Cf. Lerman, 232 F.3d at 151 (witnesses from out of state are just as motivated to see their candidate on the ballot as registered voters from that state).

Any concern defendants may have about keeping witnesses within the subpoena power of the New York courts in case a petition is challenged can be mitigated by adding a provision to the witness statement in which the witness consents to jurisdiction and service of process in New York. This is far more narrowly tailored than preventing all non-qualified New York voters from acting as witnesses. "Federal courts have generally looked with favor on requiring petition circulators to agree to submit to jurisdiction for purposes of subpoena enforcement, and the courts have viewed such a system to be a more narrowly tailored means than a residency requirement to achieve the same result." Brewer, 531 F.3d at 1037; Libertarian Party of Va., 718 F.3d at 318; Savage, 550 F.3d at 1029–30; Krislov, 226 F.3d at 866 n.7; Spano, 314 F. Supp. 3d at 460; Libertarian Party of Conn., 2016 WL 10405920, at *7.

Defendants argue that this solution still invites fraud because petitions and their signatures are presumed valid under New York law. As a result, defendants posit that a fraudulent witness might lie about his identity and forge signatures with virtual impunity because the party challenging a petition's validity would be unable to obtain enough evidence to rebut

5

this presumption in the short time allowed. This seems a speculative concern, as there is no evidence before the Court that in any of the jurisdictions where local residency requirements do not exist or have been invalidated, there has been even a single claim of fraud or the failure of an out-of-state witness to timely respond to inquiry.

In any event, a properly drafted injunction can eliminate this risk. Plaintiffs have stipulated that the candidate should bear the burden of securing a non-New York witness's timely response to a subpoena if requested, and that if the candidate does not produce the witness, the signatures are automatically deemed invalid. The Court will incorporate that condition into its injunction.

Thus, because Section 6-140(1) fails to pass strict scrutiny, plaintiffs are likely to succeed on the merits.

## II. Remaining Elements

In this instance, the remaining elements (irreparable harm, balance of the equities, and public interest) are intertwined. Although plaintiffs' failure to bring this action earlier weighs against them, this Court fails to see how an injunction will prejudice other candidates. Moreover, the fact that plaintiffs will likely succeed on the merits and suffer irreparable harm overcomes any potential effects of the timing issue.

"[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976); see also Mullins v. City of New York, 307 F. App'x 585, 587 (2d Cir. 2009) ("Where a plaintiff alleges an injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed.").

The Court recognizes, however, that a plaintiff who waits too long before seeking equitable relief may have waived it. "Laches is an equitable defense which bars injunctive relief where a plaintiff unreasonably delays in commencing an action." Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V., 17 F.3d 38, 44 (2d Cir. 1994) (citing Stone v. Williams, 873 F.2d 620, 623 (2d Cir. 1989)). "[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995).

As defendants note, this is the second time a challenge to Section 6-140(1)(b) has been brought at the start of the petition period for no particularly compelling reason. The last time this occurred, Merced v. Spano, No. 16-cv-3054, 2016 WL 3906646 (E.D.N.Y. July 14, 2016), Judge Johnson recognized that plaintiffs' success was likely, but adopted defendant's laches position. Indeed, at oral argument plaintiffs conceded that the reason they filed this case and sought relief so late was because the national party couldn't get its act together sooner.

Although this is the second time plaintiffs have manufactured a timing crisis, defendants have failed to adequately demonstrate that the imposition of the proposed injunction will prejudice them or candidates currently seeking ballot access. First, since Free Libertarian Party, Inc. v. Spano, 314 F. Supp. 3d 444 (E.D.N.Y. 2018), the State has been on notice that the constitutionality of Section 6-140(1)(b) was in doubt. Spano merely agreed with numerous, earlier out-of-circuit cases and followed the Second Circuit's reasoning in Lerman to conclude that the statute is unconstitutional.

Moreover, ordering defendants to halt the enforcement of Section 6-140(1)(b)'s in-state requirement, provide access to petition forms with a consent to jurisdiction provision, and give reasonable notice of the changed law using their website, is sufficient to ensure all candidates are

aware that Section 6-140(1)(b) will not be enforced as written. In the remaining four weeks of the petition process, every independent candidate that is seeking to obtain access to the ballot will almost certainly have repeated contact with defendants through their public-facing website. Indeed, the New York State Board of Elections only needs to place conspicuous notice of this change on their website and provide a sample form of the new petition. Political campaigns and petitioning operations are heavily incentivized to be closely attuned to the news cycle and quick to take advantage of new developments. With four weeks left in the petitioning period, independent candidates will have enough time to learn, adjust, and, if necessary, leverage an expanded pool of witnesses to increase the number of signatures on their petitions.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction is granted. That injunction shall issue separately.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
       May 3, 2022